STATE *vs*. FRANK C. THOMPSON.

Cumberland.    Opinion December 14, 1892.

*Fish.    Jurisdiction of State.    Judicial Notice.    County lines.    R. S., c. 40, § 17;*
*c. 131, § 2; Stat. 1891, c. 61, § 17.*

The jurisdiction assumed by this State over our shore fisheries by its statutes
is not unconstitutional as in contravention of the authority of the United
States in the same premises.

The court has judicial knowledge that Casco Bay, computed to extend for a
distance of thirty miles along our coast, contains many minor bays, harbors
and inlets, within which the taking of porgies and menhaden by seines is
inhibited by the statutes provided the entrance to such waters is less than
three miles between outside headlands.

Where the facts bearing on the question are undisputed, or if disputed have
been settled by the aid of a jury, the court must ultimately determine as a
matter of law where the geographical boundaries of a county are located.

Even if the map of Cumberland County, offered by the respondent and rejected,
were admissible as tending to show the easterly line of that County, still its
rejection became immaterial inasmuch as its effect was overcome by other
more controlling evidence.   The alleged offense was committed in the waters
between Flagg island and Wood island in Casco bay, and by the act of
incorporation, dated in 1760, all the islands in that bay are included in that
County.

ON EXCEPTIONS.

This was an indictment for violating statute of 1891, c. 61, §
17, with reference to taking porgies.   The act was charged as
having taken place in Casco Bay, July 18, 1891.   The material
part of the indictment is as follows :

". . . At that part of Casco Bay, so-called, situated between
Flag island, so-called, and Wood island, so-called, within the
county of Cumberland and State of Maine, being the master and
in control of the steamer Mary P. Bates then and there equipped
and supplied with nets, to wit : purse and drag seines of more
than one hundred meshes in depth, for the taking of fish, to wit :
menhaden and porgies, did then and there unlawfully take and
cause to be taken with said nets and seines large quantities of
menhaden and porgies, to wit : six hundred barrels of menhaden
and porgies, in and from the waters of Casco Bay, to wit : that part
and inlet of said Casco Bay lying, extending and being between

the islands aforesaid in the county of Cumberland aforesaid, each and every entrance to said Casco Bay and each and every entrance to that part and inlet of said bay lying, extending and being between the islands aforesaid, being less than three nautical miles in width from land to land, and said part and inlet of said bay between the islands aforesaid, being less than three nautical miles in width from land to land, to wit: from said Flag island to said Wood island; against the peace of said State," &c.

There was a second count alleging that the offense was committed in Sagadahoc county. A *nol pros.* was entered as to this count after verdict against the defendant. The indictment was found and the case tried in the Superior Court for Cumberland county.

At the trial, the counsel for the respondent requested the court to give the jury the following instructions, which the court declined to give except as given in the charge.

1. "That vessels of the United States do not violate chapter 61 of the public laws of 1891, by fishing for menhaden or porgies in the bay known as Casco Bay, extending from Cape Elizabeth to Small Point.

2. "That said Casco Bay is not a small bay within the meaning of chapter 61, public laws of 1891.

3. "That that portion of said Casco Bay, where the offense is alleged to have been committed, is within the county of Sagadahoc, and not within the county of Cumberland.

4. "That the defendant must be tried either in Lincoln county where he was found, or in a neighboring county; and the county of Cumberland is not a neighboring county within the meaning of chapter 95, section 10 of the public laws of 1891."

The defendant took exceptions to the foregoing refusals and to the refusals to admit evidence as appears in the opinion.

The case is stated in the opinion.

*Frank W. Robinson,* County Attorney, for the State.

*Benjamin Thompson,* for defendant.

Vessels enrolled under the laws of the United States do not

violate the laws of the State of Maine by fishing in Casco Bay, the entrance from headland to headland of which bay is nearly thirty miles in width, because the jurisdiction of the State, so far as it applies to fisheries, does not extend to it; therefore, the defendant cannot be held to have violated the laws of the State of Maine, by having fished in such bay. *Com.* v. *Manchester*, 152 Mass. 230; *Manchester* v. *Mass.* 139 U. S. 240.

Large bays like Casco Bay, extending from Cape Small Point to Cape Elizabeth, a distance of nearly thirty miles across its entrance, is not a small bay within the meaning of the statute; it was not the intention of the Legislature to restrict fishing in large bays, such as Casco Bay.

The language of the statute is, "in all small bays, inlets, harbors, or rivers, where any entrance to the same or any part thereof, from land to land, is not more than three nautical miles in width."

The object of the statute is very concisely stated in *McLain* v. *Tillson*, 82 Maine, 281, and while this court in that case referred to Casco Bay as being one to which the statute applied, yet it was not necessary to the decision of that case, and if the language of the court there is to be followed, there are no bays upon the shores of this State in which fishing is not prohibited. Under such a construction of the statute, the only place where porgy fishing can be lawfully carried on, will be in the open sea.

The Legislature had two interests to consider in the passage of the statute; one, the preservation of the fishing interest, the other, the protection and preservation of the manufacturing industry growing out of the catching of porgies, and the obtaining of food fish, such as mackerel.

Offense, if any, committed in Sagadahoc county.

The language of the act of 1760, "northwesterly upon said Casco Bay to New Meadows creek or river," means that the line shall be run northwesterly from Small Point upon Casco Bay, until it strikes the deep water and natural channel of the New Meadows river, which the chart shows to be in the vicinity of Mark island; and the variation of the compass in 1760 would have carried it still farther to the southward of that island.

The place which constitutes the mouth of the New Meadows creek, or river, must forever remain unknown, unless this court authoritatively speaks.

It is apparent from the testimony, that the dividing line between Casco Bay and the New Meadows river, is not well defined.

Map admissible in evidence.    1 Greenl. Ev. § § 139, 149 and note.    *Id.* § 189, and note.

Defendant not indictable in Cumberland county.    Stat. 1891, c. 61; c. 95, § 10; c. 126, § 2.

PETERS, C. J.    A verdict was rendered against the respondent for illegally seining menhaden and porgies on our coast. R. S., c. 40, § 17.    Public Laws 1891, c. 61.    In the trial several rulings were given that are now complained of.

The point was taken that the jurisdiction over the shore fisheries assumed by the State is in contravention of the authority possessed in the premises by the United States. But the Federal Supreme Court does not so hold. *Massachusetts* v. *Manchester*, 139 U. S. 240, 262; *Com.* v. *Manchester*, 152 Mass. 230.

It is objected that our statute does not apply to taking menhaden and porgies in such wide and extended waters as are those of Casco Bay.    It is argued that the decision in *McLain* v. *Tillson*, 82 Maine, 281, does not conclusively settle this question.    But we regard the opinion in that case as very apposite to the present contention.    The allegation is not that the offense was committed in Casco Bay, which is said to be thirty miles or more wide between outside headlands, but that it was committed in that part of Casco Bay which lies between Flag island and Wood island in Cumberland county.    The government correctly contends that the locality thus described, although within the general waters of Casco Bay, is also an inlet or inner harbor of itself, the entrance to which is less than three miles wide.    There are many bays and inlets within the general bay. Any different interpretation would render the fishery laws of the State ineffective for the purposes intended by the framers of them.

A question arose at the trial whether the waters flowing between Wood island and Flag island are within the limits of Cumberland county. If an offense be committed within one hundred rods of a county line, it may be regarded for purposes of jurisdiction as committed in such county. R. S., c. 131, § 2.

To help in substantiating the contention of the respondent, that the locality referred to is in Sagadahoc and not Cumberland county, Chace's map of Cumberland county, published in 1857, was offered in evidence, and was excluded by the presiding judge. Even if the map were an admissible piece of evidence, its rejection became immaterial in view of the more controlling fact, hereafter stated, upon the force of which the judge correctly ruled, as a matter of law, that the particular locality where the offense was confessedly committed is within Cumberland county.

In 1760, Cumberland county was established by the Provincial Assembly of Massachusetts Bay with the following boundaries :

"*And be it further enacted*, That the westernmost of the two new counties aforesaid shall be, and it is hereby declared to be, bounded, on the west by the easterly line of the county of York above described ; on the north by the utmost northern limits of this province : on the southeast by the sea or western ocean and by Casco bay ; from the easterly point of which bay, viz., from Smallpoint, the line shall run northwesterly upon said Casco Bay to New Meadows creek or river, and up said creek or river, as far as Stevens' carrying-place at the head of said creek or river ; thence across said carrying-place to Merrymeeting Bay and Androscoggin river ; from thence it shall run up said Androscoggin river thirty miles ; and from thence north two degrees west on a true course to the utmost northern limits of the province ; including all the islands in Casco Bay aforesaid, and on the sea coast of the said new county ; and all the towns, districts and lands within the said bounds, together with the

islands aforesaid, shall, from and after the first day of November, one thousand seven hundred and sixty, be and remain one entire and distinct county, by the name of Cumberland, of which Falmouth shall be the shire or county town; and the inhabitants of said county of Cumberland shall have, use, exercise and enjoy all such powers, privileges and immunities, as, by law, the inhabitants of any other county within this province have, use, exercise and enjoy." R. S., of Maine, p. 1010.

Although one of the county lines is made to run from Small Point *upon* Casco Bay, all the islands in the bay are made a part of the (then) new county; and we are not aware that, in the creation of any new counties since, or in any alterations of county lines, the two islands called Wood and Flag islands, indisputably situated in Casco Bay, have ever been transferred from Cumberland to any other county. Between these two islands the offense is alleged and proved to have been committed.

The counsel for the defense does not, we apprehend, deny that the judge could, upon his own knowledge and all the evidence produced, make a peremptory ruling that Wood and Flag islands are within the county of Cumberland. Questions of geographical boundaries are ultimately for the court to determine. Otherwise we might have as many different lines established as there were juries passing on the question. One jury is not bound by a precedent set by another jury. If it were a question that could arise but once, a jury might settle it.

There are certain geographical facts of which courts take judicial notice, for the reason that they are universally recognized, or are within the territorial jurisdiction of the court. Wade on Notice, 2d ed. § 1410, and numerous cases cited in the section. See also 89 Amer. Decisions, 663, for cases on same subject. It would not be profitable to explore the multitude of cases touching this principle, because they are so variant from one another, are attended with so many exceptions and qualifications, and are dependent upon facts peculiar to each case. *State* v. *Wagner*, 61 Maine, 178, is a leading case on the question. Sufficient to say, that when a line between counties in this State must be ascertained and declared, the court must

declare it. The responsibility of the question is more fittingly there than upon a jury.

*Exceptions overruled.*

WALTON, VIRGIN, LIBBEY, FOSTER and HASKELL, JJ., concurred.